## M. V. COLLUM *v.* THE STATE.

1. ADULTERY.— By the Revised Penal Code the law of adultery has been materially changed, and the offense may now be committed in either of two modes: 1st, by the living together and having carnal intercourse with each other of a man and a woman of whom either is married to some other person; or, 2d, by "habitual carnal intercourse" of such parties with each other, without living together. The alterations are such as to necessitate corresponding changes in criminal pleadings, proofs, and instructions to juries, and many of the adjudications under the former law are now inapplicable and may mislead. See this case and the opinion *in extenso.*

2. SAME — PLEADING — EVIDENCE. — It is not incumbent on the State to allege or prove the name of the person to whom one of the adulterers is married; and if the name be alleged the allegation is not a descriptive one, but is surplusage, and need not be proved.

3. SAME — CHARGE OF THE COURT. — When, as in the present case, the adultery if charged to have been committed by " habitual carnal intercourse," without cohabitation, it was error to so instruct the jury as to permit a conviction without proof that the carnal intercourse was " habitual." The phrase " habitual carnal intercourse," however, is a familiar and untechnical expression, and there is no need to explain it by instructions.

APPEAL from the County Court of Navarro. Tried below before the Hon. R. C. BEALE, County Judge.

The indictment charged the appellant and one Mrs. Mary Wiley with the crime of adultery, alleging habitual carnal intercourse for one year prior to June 1, 1880. Having obtained a severance from his co-defendant, the appellant was tried on the 10th day of March, 1881, convicted, and his punishment assessed at a fine of $100.

Pat Nolan was the first and the main witness for the State. He testified in substance that he occupied a room in the house occupied by Mrs. Wiley in the town of Corsicana, and on more than half a dozen occasions saw the appellant and Mrs. Wiley lying on the bed in Mrs. Wiley's room together. Ordinarily on such occasions Mrs. Wiley would remove the candle from her room, and place it on the table in the adjoining room of the witness. He had often heard them on the bed together at night, talking, but in a voice so low that he could not understand what was said. The witness knew that subsequent to these transactions, and after Mrs. Wiley had moved to Mr. Melton's, she gave birth to a child.

The testimony of Mr. and Mrs. Melton was substantially the same and to the effect that upon the recommendation of the appellant, they employed Mrs. Wiley and Pat Nolan to help them work their crop out of the

grass.   Nolan stayed with them about one week.   Mrs. Wiley remained with them in their house for about six weeks, doing sewing — some sewing for the appellant. At the end of six weeks she moved into a cabin in the yard, rented for her by the appellant.   The appellant visited their house as ordinary neighbors visited, but did not call for Mrs. Wiley though she frequently came in the room during his visits.   Mrs. Wiley was in the habit of taking walks, but the witness did not know that on any of these walks she met the appellant.   Mrs. Wiley had a bastard child while occupying the cabin, and the appellant at the time of her confinement promised to pay Mrs. Melton if she would wait on her.   Appellant was naturally a kind-hearted man and had previously aided the poor.   Mrs. Wiley was a poor woman.   Appellant had frequently played with and fondled the child after its birth, and asked if it was not a fine child.

Eugene and Simon Collum, sons of the defendant, testified for their father, assailing the reputation of Pat Nolan for truth and veracity.   They testified that their father had often given to the poor, both money and provisions, when he could ill afford to do so.

*Read & Read,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

Winkler, J.   By a careful comparison of the law of adultery at present in force with the provisions of the Penal Code in force prior to the last revision, it will be seen that material changes have been introduced by that revision.   Not the least in importance is the change in the law in defining the offense itself, which, by the present law, is thus defined: "Adultery is the living together and carnal intercourse with each other, *or habitual carnal intercourse* with each other without living together, of a

man and a woman, when either is lawfully married to some other person." Penal Code, art. 333.

The change in the law must be borne in mind in trials for this offense where, as in the present case, the offense is alleged to have been committed since the last revision of the Code went into operation. Especially should these changes be carefully observed in the preparation of indictments or informations, and in the charge of the court as to what the proof must show in order to warrant a conviction. By a careful reading of the article of the Penal Code, which defines the offense, it will be seen that the crime of adultery may be committed in either one of the two modes mentioned in the article above set out, the two modes being separated by the disjunctive *or* found in the article quoted. That is, when a man and a woman, either of whom is lawfully married to some other person, *shall live together and have carnal intercourse with each other*, both the man and the woman would be guilty of the offense, though only one of them be married to some other person. Penal Code, art. 335.

Likewise, in other words, *or* when the man and the woman shall have *habitual carnal intercourse with each other*, without living together, the other essentials as to the marriage of one of the parties to some other person being present. It was a part of the law prior to the revision, on the subject of the proof of the crime, that it was sufficient to prove that the parties cohabited together, and the like. See old Penal Code, art. 393. Whereas by the present Code the whole offense is embraced in the definition, and the article of the former Code is omitted entirely by the revision. From the language employed we think it manifest that more is required to be alleged, and, consequently, further evidence is required by the revision than by the former law on the subject, and hence we conclude that adjudications under the old law cannot furnish a safe and sufficient guide in the administration

of the present law, so far as the changes are concerned, and especially must this be the case when the change, as to the proof, is so manifest.

To apply these conclusions to the present case, the indictment does not charge the parties with living together, but does charge that they did "unlawfully and habitually have carnal intercourse with each other," with proper averment as to one of the parties being married to some other person. The indictment, in charging the marriage of one of the parties upon whom adultery is charged, descends into what we deem unnecessary particularity, by alleging or attempting to set out the name of the other person to whom the adulterer was married.

In our opinion it would be sufficient to allege in the indictment the lawful marriage to some other person, as set out in the statute, and the law only demands that proof be made that the party was lawfully married to some other person than the one with whom the adultery is charged, and it is not incumbent on the prosecution to either allege or prove the name of the other person to whom one of the parties was lawfully married. We therefore conclude that the question raised on the subject of the testimony of the name of this other person was wholly unimportant and immaterial, and an unnecessary consumption of time; this portion of the indictment, not being necessary to the description of the offense, might properly be treated as surplusage. This ruling would not, of course, apply to a descriptive averment as to the subject of the crime. In such case, the description or allegation must be proved, though it be pleaded with greater particularity than necessary.

The charge of the court was a substantial compliance with the construction given by this court to the laws in force prior to the revision, but omitted to notice the important changes made in the revision, in that it gave the jury an instruction as to what proof would warrant a

conviction, which, whilst correct with reference to the former law, as held by this court (*Swancoat* v. *State*, 4 Texas Ct. App. 105, and in *Parks* v. *State*, Id. 134, which were decided under the former law), was defective in that it did not instruct the jury that the carnal intercourse between the parties must be shown by the testimony to have been habitual, that being the kind of carnal intercourse the law condemns, and the kind with which the parties are charged in the indictment. We make no ruling as to what the indictment should allege, or what the State would be required to prove under a charge such as is defined in the first clause of the article quoted above, this not being involved in the present case.

The word "habitual," as employed in the Code, is not one of technical signification, but one to be understood as it is used in common acceptation, and hence needs no explanation by the charge of the court. The jury must be held competent to understand what is meant by the language in common use, and what is meant by the expression *habitual carnal intercourse.* We are, therefore, of opinion that the court did not err in refusing the special charge asked by the defendant's counsel explaining what the word habitual, or habitual carnal intercourse, signifies. We are of opinion, however, that the requested instruction was sufficient to call the attention of the court to the language employed in the statute which defines the offense, and to the fact that this feature had been omitted and overlooked in the charge, and that the error was one into which the court was doubtless led, in a measure, by rulings made by this court under former statutes. Still it was not the law of this case, by reason of the changes made in the law since these decisions were rendered. As there are several important changes made in the former laws by the revision, it may not be amiss to invite the attention of all concerned to these changes. The old law will be found in the old Penal Code, arts.

392–5; Pas. Dig. arts. 2022–5.   The law now in force is found in the Revised Penal Code, arts. 333–6.   The charge of the court gave the jury a latitude against the defendant and to his prejudice not warranted by the present law, for which the judgment will be reversed and a new trial awarded.

*Reversed and remanded.*